This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **NO. 30,114**

**JOHN NELSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Drew D. Tatum, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Daniel R. Lindsey
Clovis, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Chief Judge.**

Defendant appeals from his conviction of conspiracy to commit trafficking, which was entered pursuant to a guilty plea. In this Court's notice of proposed summary disposition, we proposed to affirm. Defendant has filed a memorandum in

opposition. We have considered Defendant's arguments, and as we are not persuaded by them, we affirm.

**The Denial of Defendant's Motion to Withdraw His Guilty Plea**

Defendant was charged with conspiracy to manufacture methamphetamine based on evidence that he purchased large quantities of over-the-counter pseudoephedrine, that his wife, Tad Nelson, was found with the materials necessary for a meth lab in their home, and on inculpatory statements by Ms. Nelson. [RP 1, 62, 69-70; DS unnumbered page 1] This was a third-degree felony for which Defendant could have been sentenced to three years' imprisonment. *See* NMSA 1978, § 30-28-2 (1979); NMSA 1978, §30-31-20 (1990) (amended 2006). Defendant entered into an agreement with the prosecution to plead guilty to the charge, and, under that agreement, any incarceration time was to be capped at eighteen months. [RP 33-34] Based on the plea, the district court entered a judgment of conviction, but postponed sentencing until after a diagnostic evaluation could be performed. [RP 40-41] After the entry of the judgment but prior to sentencing, Defendant got new counsel and filed a motion to withdraw his plea. [RP 51-54] The motion relied on an incorrect legal standard for the withdrawal of a plea. [RP 53] It sought to have the plea withdrawn pursuant to the "any fair and just reason" standard articulated by this Court in *State v. Hunter*, 2005-NMCA-089, ¶ 28, 138 N.M. 96, 117 P.3d 254—a standard that was

subsequently rejected by our Supreme Court on certiorari. *See State v. Hunter*, 2006-NMSC-043, ¶ 11, 140 N.M. 406, 143 P.3d 168. The motion stated that Defendant's plea should be withdrawn because Defendant's original trial counsel failed to interview Ms. Nelson, failed to interview any other witness, did not file any pretrial motions, and did not discuss any defenses with Defendant. [RP 52] The motion also asserted that Defendant's three-month-old daughter had died and that Defendant's other children were in the custody of the Children, Youth, and Families Department. [RP 52] The district court held a hearing at which Defendant's original counsel testified that he advised Defendant to plead guilty because Defendant admitted to buying much of the pseudoephedrine, although some of the purchases seemed to have been made by someone else forging his signature, because Defendant did not have an alibi defense, and because statements by several accomplices, including Defendant's wife, would have implicated Defendant. [RP 69-74] Defendant did not testify at the hearing. The district court denied the motion, finding that Defendant failed to establish his claim of ineffective assistance of counsel.

"A motion to withdraw a guilty plea is addressed to the sound discretion of the [district] court, and we review the [district] court's denial of such a motion only for abuse of discretion." *Id.* (internal quotation marks and citation omitted). The standard for granting a motion to withdraw a plea is the same whether the motion was filed

before or after sentencing. *Id.* That standard is that a district court abuses its discretion in ruling on a motion to withdraw a plea "when it is shown to have acted unfairly, arbitrarily, or committed manifest error. A denial of a motion to withdraw a guilty plea constitutes manifest error when the undisputed facts establish that the plea was not knowingly and voluntarily given." *Id.* (internal quotation marks and citation omitted). "The voluntariness of a plea entered on the advice of counsel depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Id.* ¶ 12 (internal quotation marks and citation omitted). In order to establish the involuntariness of a plea agreement, a defendant must establish both that his counsel's performance was deficient and that the deficient performance prejudiced him. *Id.* To show prejudice in this context, a defendant must establish that "but for counsel's errors, he . . . would not have pleaded guilty and would have insisted on going to trial." *Id.* ¶ 26 (internal quotation marks and citation omitted).

In Defendant's docketing statement, he asserted that his counsel failed to interview any witness, failed to properly investigate the case, failed to file pretrial motions, and failed to discuss defenses and alibis with Defendant. In this Court's notice of proposed summary disposition, we pointed out that some of these arguments were not supported by the record. At the hearing on Defendant's motion, Defendant's

4

original counsel testified that he discussed a possible alibi defense with Defendant but concluded that Defendant did not have an adequate alibi. [RP 69-70] We also pointed out that Defendant's docketing statement failed to indicate with any specificity what meritorious motions should have been filed or what defenses put forth. In the absence of such specificity on these issues either in the district court or on appeal, we stated that we could not conclude that the general failure to file motions or discuss defenses was below the range of competence demanded of attorneys in criminal cases.

As for the failure to investigate the case and interview witnesses, we stated that Defendant had not explained what information would have been obtained had his original counsel conducted interviews or done further investigation. Defendant also apparently presented no evidence at the hearing regarding what further information he would have obtained through the efforts he now believes his counsel should have made. [RP 69-74] Accordingly we proposed to conclude that Defendant had not established that he was prejudiced by any alleged deficiencies in his original counsel's performance. We also noted that it appeared that Defendant never testified at the hearing on his motion to withdraw his plea, and therefore, never presented any evidence that he subjectively would have wanted to go to trial if he had been aware of the information he claims he did not get from his original counsel. *Cf. id.* ¶ 27 (stating that the defendant's testimony at his hearing on his motion to withdraw his

plea provided evidence that he would have withdrawn his plea had he been aware that he had a full defense to the charge). As Defendant apparently presented no evidence to the district court that, had his counsel advised him differently, he would have taken the risk of going to trial rather than the certainty of the plea agreement he actually accepted, we proposed to hold that Defendant could not establish that he was prejudiced. We stated that as Defendant could not establish both prongs of an ineffective assistance of counsel claim, he could not demonstrate that his plea was not knowing and voluntary. Accordingly, we proposed to hold that the district court did not abuse its discretion in denying Defendant's motion.

In Defendant's memorandum in opposition, he abandons all of his general arguments regarding his original counsel's allegedly defective performance except for counsel's failure to interview Defendant's wife, Tad Nelson. Defendant's memorandum in opposition makes brief mention of other arguments, but these arguments are either not adequately developed, were not presented to the district court, or both. For instance, Defendant states that counsel failed to pursue a "forgery defense," by which we understand Defendant to mean that counsel should have done more investigation to help raise a reasonable doubt that Defendant was actually the person who signed any of the pharmacy logs. [MIO 8] However, as Defendant had admitted to original trial counsel that he had signed many of the logs but it appeared

6

that his wife had forged his name on some of them [RP 69-70], Defendant does not explain what further investigation would have helped establish that Defendant did not sign the ones that he told his trial counsel he did in fact sign. Rather, it appears that all original trial counsel could have done is argue to the jury that since some of the signatures were clearly forged, it raised a reasonable doubt as to the rest of them. Defendant also states that counsel improperly advised him that he would do no jail time under the plea agreement. [MIO 10] Defendant does not indicate that there was evidence of this fact presented at the hearing, and does not present any authority indicating that any such statement fell below the standard of competence. Accordingly, we do not review this argument. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that this Court will not review an argument that is inadequately developed). Accordingly, this is the only factual predicate for Defendant's claims that will be considered in this opinion.

Defendant first relies on this Court's decision in *State v. Aragon*, 2009-NMCA-102, 147 N.M. 26, 216 P.3d 276, in support of his argument that the failure to interview Ms. Nelson supports reversal. However, Defendant's argument fails to recognize the difference in the procedural postures of *Aragon* and this case. In *Aragon*, the defendant raised his ineffective assistance of counsel claim for the first time on appeal. *Id.* ¶ 8. Under such circumstances, this Court will examine whether

7

a defendant has made a prima facie case of ineffectiveness, and if so, will remand for an evidentiary hearing on the claim. *Id.* This is what happened in *Aragon*. *Id.* ¶ 20. In contrast, here, Defendant raised his argument in the district court and the district court has already held an evidentiary hearing on the merits of the issue. Defendant is not entitled to a second evidentiary hearing—he was obligated to fully establish his claim at the hearing he was actually afforded. *See Hunter*, 2006-NMSC-043, ¶ 31 (declining to remand for an additional evidentiary hearing on the question of ineffective assistance of counsel since one had already been held in the district court). Accordingly, *Aragon*'s determination that the defendant established a prima facie case of ineffective assistance of counsel sufficient to warrant further development of the facts at an evidentiary hearing does not support Defendant's claim for reversal of his conviction under the circumstances of this case.

To the degree that Defendant relies on *Aragon* to argue that the failure to interview witnesses is necessarily ineffective assistance of counsel, we disagree. Even assuming that the failure to interview Ms. Nelson would fall below the standard of a reasonably competent attorney, Defendant is still required to demonstrate that he was actually prejudiced by his counsel's deficiencies. *See Hunter*, 2006-NMSC-043, ¶ 12. Defendant argues that had Ms. Nelson been interviewed, Defendant's original trial counsel would have discovered that Ms. Nelson was unlikely to testify against

Defendant at trial because of her Fifth Amendment right not to incriminate herself and because of the marital privilege, and that her prior statements against him likely would have been excluded under the Confrontation Clause. As these are legal arguments and do not actually require factual information that would have been obtained during an interview, we cannot see how the failure to interview Ms. Nelson produced any deficiency in original trial counsel's advice to Defendant. Instead, it seems that what Defendant is really arguing relates to counsel's failure to advise Defendant about the law and the likelihood that Ms. Nelson would not testify against him, either because she would invoke her privilege under the Fifth Amendment or because Defendant could prevent her from testifying under the marital privilege, and that if she did not testify, her prior statements against him would be inadmissible due to the Confrontation Clause. Defendant has not asserted that he actually made these particular arguments in the district court, and it does not appear from the record that he did. Instead, Defendant's motion in the district court made the general assertion that original trial counsel was ineffective for failing to interview Ms. Nelson because she was the "State's star witness." [RP 52] At the hearing, it appears that Defendant simply argued that there might be a "significant issue" with admitting Ms. Nelson's prior statement. [RP 73] It may be that Defendant did not make the more specific arguments he now makes on appeal because he was under the misapprehension that

the district court could grant his motion under the "any fair and just reason" standard articulated by this Court in *Hunter*, 2005-NMCA-089, ¶ 28. But regardless of the reason, we do not believe that the arguments Defendant made in the district court were sufficient to alert the district court to the argument that Defendant now makes on appeal. *See State v. Granillo-Macias*, 2008-NMCA-021, ¶ 11, 143 N.M. 455, 176 P.3d 1187 (filed 2007) (holding that the defendant's general objection as to relevancy and admissibility of the officer's testimony regarding the field sobriety tests was insufficient to alert the district court to the argument on appeal that the field sobriety tests were not administered or interpreted according to the standards of the National Highway Transportation Safety Administration); *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (stating that in order to preserve an issue for appeal, the defendant must make a timely objection that specifically apprises the district court of the nature of the claimed error). Accordingly, we affirm based on Defendant's failure to preserve his argument.

Even if Defendant had adequately preserved the issue, we would affirm the district court. First, Defendant has not demonstrated that the marital privilege would have actually prevented Ms. Nelson from testifying about relevant evidence in this case, as that privilege only prohibits her from testifying about certain confidential statements that she and Defendant may have made to one another; it does not prevent

10

her from testifying about statements that were not confidential because they were made in the presence of others, and it does not prevent her from testifying about Defendant's conduct. *See* Rule 11-505 NMRA. Defendant has not established a factual basis for any argument that there were specific statements that would have been protected by the privilege under this rule. *See Hunter*, 2006-NMSC-043, ¶ 23 (indicating that in arguing that a plea was not knowing and voluntary due to ineffective assistance of counsel, a defendant is required to establish a "sound factual basis" for his claim of ineffective assistance of counsel). Second, to the degree that original trial counsel was ineffective in failing to inform Defendant (1) that if Ms. Nelson did not plead guilty, she could invoke her Fifth Amendment right not to make any statements that would incriminate herself, and (2) that if she did not testify, her prior statement to the police would likely be inadmissible under the Confrontation Clause, Defendant has not demonstrated that these failures prejudiced him because the evidence presented at the hearing did not establish that Defendant would have gone to trial if his original trial counsel provided him with this information.

"[A] defendant is generally required to adduce . . . evidence to prove that there is a reasonable probability that he or she would have gone to trial[]" had counsel's conduct not fallen below the standard of reasonable competence. *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 29, 130 N.M. 179, 21 P.3d 1032. Such evidence may

11

include the defendant's own testimony that he would have done so, although this evidence alone may be insufficient to establish prejudice. *See id.* A defendant may therefore meet his burden by introducing evidence of pre-conviction statements or actions that indicate whether he was disposed to plead or go to trial. *See id.* ¶ 30. We will also consider the strength of the State's case, since "the evidence against a defendant informs his or her decision about whether to challenge the charges at trial." *Id.* ¶ 31. This is because "[t]here is a direct relationship between the strength of the case against a defendant and the likelihood that he or she will plead guilty or no contest. As the strength of the evidence increases, so does the likelihood that a defendant will accept a plea offer instead of going to trial." *Id.* ¶ 31.

In this case, Defendant did not testify at the evidentiary hearing on his motion to withdraw his plea, and therefore there was no testimony that he subjectively believes he would have wanted to go to trial had his counsel informed him of the possibility that his wife might not testify against him. *Cf. Hunter*, 2006-NMSC-043, ¶ 27 (stating that the defendant's testimony at his hearing on his motion to withdraw his plea provided evidence that he would have withdrawn his plea had been aware that he had a full defense to the charge). Although Defendant now asserts that the fact that he has children necessarily indicates that he would have wanted to go to trial [MIO 10, 12], we disagree. Defendant presented no evidence at the hearing about how the

12

fact that he has children influenced his decision making, and we cannot take these facts into account for the first time on appeal. Furthermore, a parent facing three years' imprisonment might reasonably calculate that it was better to enter into a plea agreement that capped his imprisonment at eighteen months so as to not risk being away from his children for longer than necessary.

As for evidence of pre-conviction indications that Defendant wanted to go to trial, although Defendant moved to withdraw his plea immediately upon obtaining new trial counsel, this fact alone is insufficient to establish that he likely would have sought to go to trial if his original trial counsel had advised him about the possibility that Ms. Nelson might not testify. Rather, Defendant could have been persuaded by his current trial counsel's multiple general arguments regarding original counsel's ineffectiveness in failing to conduct witness interviews, file pretrial motions, or discuss defenses—arguments which Defendant has at this point abandoned. Defendant does not assert that there was any other evidence presented at the hearing that Defendant had previously indicated that he wanted to go to trial. *Cf. Patterson*, 2001-NMSC-013, ¶¶ 10, 30 (stating that there was evidence that the defendant repeatedly told his attorney that he wanted to go to trial because he was innocent). Finally, we look at the strength of the State's evidence against Defendant. The record indicates that the State was prepared to present the testimony of law enforcement

officers that Defendant bought approximately 1586 pills containing pseudoephedrine, an ingredient used to manufacture methamphetamine, in a 131-day period. [RP 62] Although some of Defendant's signatures in the pharmacy logs appear to have been forged by his wife, many did not. [RP 69-70] Furthermore, even if Defendant's wife did not testify, there were several other accomplices who were listed as witnesses whose testimony would be detrimental to Defendant, and there was evidence that at least one of them had pled guilty, such that he or she could not invoke a Fifth Amendment right not to testify. [RP 62, 71,72] Thus, it appears that the State had a strong case against Defendant.

In viewing all the evidence relevant to prejudice together, we conclude that the Defendant failed to establish that he was prejudiced by his counsel's failure to inform him of the possibility that Ms. Nelson would not testify against him. Therefore, the district court did not abuse its discretion in concluding that Defendant's plea was knowing and voluntary.

**Other Issues Raised in the Docketing Statement**

Defendant raised several other issues in the docketing statement, which this Court proposed to find were either unpreserved or without merit. In Defendant's memorandum in opposition, he does not address our proposed summary disposition of these arguments. Accordingly, we find that Defendant has abandoned those issues.

*See State v. Johnson*, 107 N.M. 356, 358, 758 P.2d 306, 308 (Ct. App. 1988) (stating that when a case is decided on the summary calendar, an issue is deemed abandoned where a party fails to respond to the  proposed disposition of the issue).

Therefore, for the reasons stated in this opinion and in our notice of proposed summary disposition, we affirm.

**IT IS SO ORDERED.**

---

**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

---

**MICHAEL E. BUSTAMANTE Judge**

---

**JONATHAN B. SUTIN, Judge**